Please call the next case. Mr. Piles, you may proceed. May it please the court, counsel, my name is Scott Piles. I represent the defendant Alex Schroeder. The appellant raises three issues for the court's consideration. One that the trial court erred in denying the defendant's motion to suppress the stop effectuated by Will County Deputy Robert Kickert while he was on truck enforcement duty. The second issue is the fact that the reports and the videotape that were made by Deputy Kickert during this stop were destroyed and not available for the defendant during Deputy Kickert's testimony during this trial. And the third issue is whether the trial court erred in finding the defendant guilty in terms that he was not proved guilty beyond a reasonable doubt due to the evidence that was in place at the time of the trial. In referencing the Fourth Amendment issue in the case, the evidence that was presented at trial was that Deputy Kickert, who was a deputy of the Will County Sheriff's Office, was on truck enforcement duty that day and he was monitoring a bridge that I believe was on Wilmington Road 129. He saw the defendant's truck cross over the bridge and when asked during the motion to suppress, is it based on the sight of him crossing that bridge, is that why you initiated the traffic stop, the answer to that question was yes. And he essentially said that he initiated the traffic stop and then followed the defendant's truck until the truck pulled over. The difficulty that I have with the stop was that essentially the deputy, just on the mere sight of the truck crossing over the bridge, gave him the grounds in his mind to effectuate the traffic stop. And as he testified at the hearing, he said, well, I thought that the truck may have been over length. Strictly on his sight. And then when he went and actually initiated the traffic stop, he admitted, well, the truck wasn't that far in over length. And I guess my question was at the time is how could that possibly be an articulable fact in which to base upon reasonable suspicion if the truck wasn't really that much over length, only by a foot or two. Now, he couldn't tell us actually how far the truck was actually over length because he didn't have any of his notes and his reports that had been previously destroyed. And I think the law is pretty clear that in order to effectuate a traffic stop, it can't be just on a mere hunch. He had to have an articulable fact that led him to reasonable suspicion that there was criminal activity afoot. And based on the deputy's testimony on the motion to suppress, the only fact that he really had to go on was, well, I had a hunch that the truck may have been over length. Did he say hunch? No, hunch is my word. But the transcript though is pretty clear though. He says, I asked him point blank, and I quoted this excerpt verbatim in my brief. I asked him, why did you initiate, was the sight of him crossing the bridge, is that what you initiated the traffic stop? And the answer to that question was yes. Now, did he develop some other facts after he initiated the stop? Yes, he did. There was bulging tires, and when he went to go from a stop sign, he had slow acceleration. However, he developed those facts after he initiated the traffic stop. And the traffic stop, and whether or not the stop is valid, has to be at the time that the stop starts, at the inception of the stop. And at the inception of the stop, when he initiated it, was his vision of him crossing the bridge. And that's when he initiated the traffic stop. Now, he said, and it goes on in the question, and I also quote this in my brief, he says that after he was following him after he initiated the stop, he developed other things that were wrong. But the case law on the Fourth Amendment in the United States Supreme Court, even though it's taken a little bit more of a conservative lean over the last few years, there still has to be articulable facts that underlie the reasonable suspicion. And the only fact that we really have is the fact that while I thought he looked over length, and when he actually did the stop, he wasn't that far over length. In fact, he was close. He didn't even write him a ticket for it. Now, did he develop some facts after? Did he ever testify that he stopped because of the length requirement? The excerpt that you have, not all of us have access to the record, but in your brief, you've got a Q&A here, and I don't see anything where he says he stopped because of the violation of the fee. I believe on the second page, if I'm correct, I believe he does get into it at the tail end of the section I quote. He talks about the fact that he may have been over length. Well, I just have on page two and three a question. Okay, and basically your observation, you saw it violated the structure of the fee requirement. Well, there were several reasons I stopped. I followed the vehicle, developed more of a reasonable suspicion for the stop. I think it's actually the question that was just before that, if I'm not correct. What was the basis for initiating the traffic stop? The fact that the truck went over the bridge? Well, that, and it's a length restricted road by 55 feet. That's what I'm talking about. What does that say? Well, he's claiming that the truck was too long. I don't think he's claiming anything. That answer doesn't say that. The answer just says that it's a length restricted road by 55 feet. He does develop it further in his testimony. Oh, he does? He does. Oh, no, that's not the only place he talks about it. Okay. He talks about a length, but in fact, there's quite a bit of detail on that. I only reference that because I know he did reference the fact that it was a length restricted. He thought that the truck was too long to cross that bridge. There's even some testimony he actually went and measured it, and this was all videotaped, and I'll talk about that in a second. No, he does get into a lot more length about that. That is the issue with regard to the Fourth Amendment. Simply, he did not have facts to back up reasonable suspicion to initiate the traffic start at its inception. This is forfeited, though, isn't it, this issue? He wasn't raising a post-trial motion. That's correct, and I did not file a written motion, and I have read the case of People v. De La Hara, which came down after this case was argued. I believe that the De La Hara decision came down in August of 2011, and this case was done in April of 2011. De La Hara is based on Enoch, which is a very old case from the Supreme Court that says it doesn't mean it's a defense trial or a jury trial. You've got to do a post-trial motion. I agree that Enoch says that, but I will say this. As you note in your decision, there's also two appellate court decisions that follow Enoch that say, well, generally it's required, but if it's a bench trial and it was all before the trial court, a post-trial motion is not. I understand that that's the law in this case, but in the De La Hara case, really the only issue that was involved there was whether or not the radar gun, the moving radar unit, whether or not there was a proper foundation and so forth. I will submit that these issues are not forfeited because I think the plain error doctrine applies. We're talking about the Fourth Amendment issue. We're talking about a Fourteenth Amendment issue with regard to the destruction of the evidence. We're talking about proof beyond a reasonable doubt, and I would submit to the court that those are plain errors and that they are not forfeited by virtue of the fact that there was not a written post-trial motion that was filed. But I do acknowledge the fact that that De La Hara case that you wrote is in existence. I also have read Enoch. I agree that there's a passage in Enoch that says both jury and non-jury cases. That's a Supreme Court decision. That's correct. The only thing I would say, though, and I don't want to disagree because you authored the De La Hara case, I would say that Enoch, though, was a jury case. That did go to jury in that case. And the only thing that I can say with regard to that is that as you, as a former trial judge, the trial courts typically don't, in a best trial, you're essentially going back to the judge asking, Judge, I'm asking you, I'm raising this post-trial motion. The trial courts in a best trial typically look at those as motions to reconsider. And then they ask the question to us, well, is there anything new? Is there any new evidence or any new law since I heard all this less than a month ago? Of course, the answer to that no question is no. They've kind of likened it to that in a best trial setting. I do agree. The De La Hara case is there, and it is the law, and I would submit to you that despite the De La Hara case, the issues that are raised in this case would fall under the Supreme Court Rule 2615, that these are plain errors. Unlike the De La Hara case, which was not, we're not talking about a plain error where there's a constitutional right or constitutional question that's in play. We're talking about whether or not there was a proper foundation laid for moving radar. So I would submit this case is different from De La Hara in terms of the forfeiture issue because we are talking about constitutional issues here in terms of Fourth Amendment, which were all raised in the prior brief. I also will address the fact that this case. As to the plain error, you're not suggesting this is closely balanced, are you? Pardon me? You're not suggesting this is a first-pronged closely balanced? No, the second. It's the second. So you're talking about a systemic or structural error, and those have been very limited, especially by recent Illinois Supreme Court cases, haven't they? Well, Justice Carter, I would say this. I think they satisfy under both prongs. If you look at the evidence that was presented in this case, I think that the case was very closely balanced, and here's why. Number one, the evidence in the case, if you look at what the testimony that was presented at the trial, there was no evidence presented by the officer as to what the weights were on each of the individual axles when they were weighed. Now, granted, there was testimony laying the foundation for the axle weights, but there was no follow-up testimony to indicate, well, the right axle in the front weighed X, and the left axle in the front weighed X. There was no testimony about that. There was also no testimony from the deputy about what the actual weight limit on the road. None of those questions were asked, and what happened was that when I made my motion for a directive finally to close the case, the trial court essentially admitted the ticket that had been written. It was a verified ticket, mind you, as all tickets are, but he admitted the actual ticket into evidence, and that's what he used to consider whether or not the defendant was weighed, and that goes into my third argument as to whether or not that evidence should have been considered. As to my second issue, the deputy in this case took a videotape. Now, there was some contest at the trial going back to the balance issue of whether or not the roadway where the weighing took place was balanced. As the deputy conceded in his testimony, you have to have a level surface in order for the truck scales to actually be weighed. We had pictures that were admitted into evidence of where the weighing took place, and it showed that the road did slope, and it was not actually, and we contested the fact that it was not a level surface for the scales to be actually accurate in terms of weighing. Now, there was a videotape, and there was a report that had been prepared about all this, but it had been destroyed. I'm certainly not here to say that the sheriff's department destroyed it so that I couldn't. I'm not saying that, and it's in the record. It's pretty clear it was an administrative screw-up. The tape wasn't requested, was it? No, it wasn't. And in addition to not being requested, there is no indication in this record that it would have been exculpatory. Well, number one, I think that there is some suggestion it would have been exculpatory because I felt that the videotape would have showed the actual level of the surface of the roadway, and I think it would have shown that it should have been weighed in a different place, and therefore, if the roadway was not level, the scales were not accurate. If the scales were not accurate, then we wouldn't have had an accurate weighing of the truck. And I think if the videotape had been there and I had seen it, I think it would have demonstrated what our picture that was put into evidence showed, that the roadway was sloping and it wasn't really level. And yes, Justice Carter, you are right. There was no Schmidt discovery request in this traffic case. That's aside from the question. This is a business of petty offense, and it's not sure if Schmidt goes that far, right? And I agree with that, too, which is part of the reason I didn't ask. You know, I don't typically ask for Schmidt discovery in a traffic case. Not that I do a lot of traffic cases, but I don't typically. Thank you. I typically don't ask for it anyway. However, the Cagle case, which I cite, and it's part of the Schmidt discovery, is that, you know, at the very minimum, the deputy should have had that stuff. If he was going to testify, he at least should have brought that and had that material ready at trial so that it could have been at least accessed by me during the case in chief. And I think Cagle stands for that. And if the fact that I did not have access to that stuff at trial, that prejudiced our ability to determine whether or not this roadway was, in fact, level or not, which they needed to show in order to get the weight and the scales put into evidence. Here, regardless of the fact that at no time during any of the testimony in the record was there ever any testimony about how much my guy's truck weighed with the exception of him. He makes a statement. He guesses during these cross-examination when he's called an adverse witness by the state. He makes a statement. He thought it was lighter than 78,000 pounds. However, that's a lot different than having the certified scale amounts put into evidence. That's a statement from the defendant. That's a statement from the defendant as to what he thought the truck may have weighed. And what does that mean, his statement as far as the proper weight? I don't know because there was never any evidence really as to how much the road, what the restriction was on the bridge. There was never any testimony presented at trial on how much the weight restriction on the bridge was. There was a suggestion of what it was, but there was never any testimony about it. And, again, it goes back to my point, you know, there's got to be proof beyond a reasonable doubt. And if all we have is a guess by the defendant as to the weight and we don't have any evidence as to what the weight restriction on the road was, I don't think the state's met their burden. Thank you. I don't believe there are any questions. Thank you, Mr. Pyle. Ms. DeMichel, you may respond. May it please the Court, Counsel, Lord DeMichel on behalf of the people. Defendant has forfeited the issues on appeal. Under De La Hera, defendant's issues were forfeited because he did not file a post-trial motion, and that's been the law, as De La Hera points out, since Enoch in 1988. There's been the requirement of the post-trial motion in the bench trial. Furthermore, defendant cannot raise his plain error argument for the first time in his reply brief under Supreme Court Rule 341H7, which provides that points not argued in the appellant's opening brief are waived and shall not be raised in the reply brief or at oral argument. Patel and Shanklin cases provide support for that. In those cases, plain error arguments were found to be waived when raised for the first time in reply briefs. While the issues are forfeited, should this Court consider the merits of the issues, they should be found meritless. First, the motion to suppress was properly denied. The traffic stop was supported by reasonable suspicion. Deputy Kickert had reasonable suspicion to believe both that the truck was over length and that the truck was overweight before he initiated the traffic stop. Reasonable suspicion based on what? He testified that the length limit of the road was 55 feet and he also testified that the weight limit was 46,000 pounds. He observed the truck and its tractor-trailer combination. He had had much experience as a truck enforcement officer, so with his experience and his observations of what the tractor-trailer combination was, he said that he knew before even measuring the truck based on the tractor-trailer combination that it was over 55 feet in length. He never said that it was close to length or a foot or two over. He never testified to that effect. He said it was in fact over length, but he exercised his discretion not to write that ticket, despite him being correct when he said as soon as he saw the tractor-trailer combination that he knew it was over 55 feet. What was his experience? Well, he had 22 years' experience as an officer, and regarding his experience in truck enforcement, he'd written 761 truck tickets the previous year. How many stops did he make? I think there was testimony in the record that he made thousands of truck stops the previous year. In fact, it was over 4,000, right? Yes. Which means that he found in 20% of the stops that he made there was a basis for issuing a ticket? Or he could have exercised his discretion not to write a ticket and just issue a written warning. Well, first he said he knew that the length was over length, and it was in fact over length. But even if it were close, if his estimate of what it is is reasonable, he still has reasonable suspicion, even if in fact it turns out that that suspicion is not supported. He also had reasonable suspicion based on a weight violation. He testified that the limit was 46,000 pounds. Well, let's take that standard reasonable articulable suspicion and let's parse it out. What's articulable suspicion? What does that mean to you? That he can state which facts we're relying on. And the facts he relied on were the tractor-trailer combination of the truck having a length that was over 55 feet. And the facts that he relied on regarding the overweight violation were a slow acceleration, which he testified was indicative of a load on the truck. He saw the bulging of the pneumatic tires. He saw the load on the truck, which contained pallets of rock salt or feed, and the way the load was sitting on the truck. He didn't initiate the stop the second he laid eyes on it. He stated that he followed the truck first before initiating the stop, and in following the truck before initiating the stop, he made those observations. Well, when did he develop that articulable suspicion as to weight? As to the weight? During the course of following it, before he initiated it. Before the stop? Yes. And so you're arguing that that was all reasonable in light of the context of the observations that the officer is articulating? Yes. Based on the officer's articulated reasons for the stop, including the limits of the weight and the length, and his facts that he used to determine that it was overweight and over length, he had reasonable suspicion to believe that the truck was violating both the weight and the length limits. Regarding the second issue, no discovery violation occurred. The day of trial, six months after the stop, defendant asked for tickets, notes, and videotape of the stop. Defendant had not made any prior discovery requests. No discovery had ever been ordered, and without any bad faith the items had been destroyed. No brevity violation occurred regarding these items, because at best they were only potentially useful, not materially exculpatory under Kaiser and Youngblood. The last issue, defendant has now changed to a sufficiency of the evidence argument. The people would argue that that is waived under 341H7, because in his brief he argued only that the motion for directed finding was improperly denied. Arguing the sufficiency of the evidence at closing argument also did not preserve the directed finding issue. That issue has been waived as well, because under the case law, Kasekiu, cited in the people's brief, defendant presented evidence and did not renew his motion for directed finding at the close of the evidence, waiving his directed finding issue. In any case, the evidence was sufficient, and the motion for directed finding was properly denied. Deputy Kickert testified as to the weight limit. He testified that he saw defendant's truck drive over the bridge with the 46,000 pound limit. He explained in detail the weighing process he went through, involving zeroing out the scales, turning the scales on, having them perform their self-check, that the scales were certified and had been tested. How does that work? He testified that he had the scales under different axles at different times. Does he then add up all of those numbers to come up with the total weight, or how does he do that? Yes, each axle is measured individually. Then he stated that he put the information from the axle weights into the computer, and the computer then generated the total weight by adding up each of the axle weights. And the ticket was admitted into evidence at C1, and it lists the total weight, and that's a combination of the axle weights. And how does he know when he does each individual axle that there's not some crossover in the weight? I believe it's just the standard. He testified that he'd been trained in the state police how to use the scales, and so that's just how the truck weighing works. Okay. It works differently with the individual ones than it does with the weigh station. You take each axle, add it together, and that's the total weight of the truck. Kickert testified that he input the weights into the computer, which generated the ticket, which he printed from the computer. The ticket was verified by Deputy Kickert. He certifies under penalty of perjury that the statements in the ticket are true and correct, which includes the statement that the total weight of the truck was 78,800 pounds. The ticket also states the 46,000-pound limit is also listed in the ticket. The ticket was properly considered as it was in the file. It had been admitted into evidence, and Deputy Kickert had laid the foundation for the ticket. The motion for directive finding was properly denied, as the evidence showed defendant drove his 78,800 pounds truck. What is it he actually certified? The ticket. Oh, no, you just broke down the elements. You're saying he certified that the weight was? On the ticket, it says that he certifies under penalty of perjury that the statements in the ticket are true and correct. That the statements are. Yes. But he's not certifying the actual weight. Well, the fact that the truck weighed 78,800 pounds is a statement that's contained in the ticket. It has to be true that the truck's weight was 78,800 pounds in order for him to sign that line. No, because if the scales are off, that's not a certification. Well, in certifying that that is the weight, he certifies that the scales were correct in leading him to that weight. He also testified as to the accuracy of the scales and that the ground was level. All he can certify is what he saw on the printout. On the printout? Yeah. He had entered the numbers on the ticket there by hand after he measured the truck according to the procedure he'd been given. Does it make really a difference? Who finds that it's overweight in this whole process? Well, the bridge limit is 46,000 pounds. No, the court finds that it's overweight based on the evidence presented to the court. The judge found that the truck had been driving overweight on the bridge. Correct, based on the evidence. Yes, based on the evidence presented. So he's really certifying what he saw on the ticket that the computer generated. The cop? The what? The police officer. The police officer is certifying that? Well, never mind. Okay. It's just precision in the land bridge. I'm sorry. Regarding the sufficiency of the evidence as a whole, after the motion for directive finding was denied, the defendant testified. He testified that his truck weighed 78,000 pounds, and he also testified that he saw the signs leading up to the bridge stating that the bridge had a 46,000 pound weight limit. So that evidence in combination with the people's evidence in their case was certainly sufficient to sustain the conviction. And if there are no further questions, yes? I actually have two questions. Sure. And it's more curiosity on my part at this point. The officer testified that there's a statute that authorizes destruction of the videotapes after 90 days if they are not evidence in a case. If there's a ticket issued and the ticket is contested or challenged, does not that videotape at that point become evidence, and shouldn't the county or the city not be destroying it? I believe that the officer said that the tape was destroyed pursuant to county policy, and there was no discussion of any statute that would have required the tape to be preserved in this case. I guess I'm asking you a legal question about the statute. I mean, whether or not the tape was properly destroyed. I believe that that is an exception to the eavesdrop statute. In this case, there was also no testimony that the videotape had audio, in which case the eavesdrop statute wouldn't apply. And furthermore, I don't believe that that section specifies a sanction for failing to comply. I'm not really concerned about a sanction. As a matter of county policy? Yeah, once the ticket is challenged, it seems to me that that videotape then becomes evidence in a case, and it ought to be pulled out of the sequence for being destroyed within the 90 days. I would say that the counties probably should be changing their policy that they evidently had in this case. Based upon that, it seems like it would probably be a good idea. And then the second question that I had is there's a local rule for Will County that says that the trial judge should order discovery in this type of situation, and that wasn't done. Does that make any difference? Well, first, I'm not even sure that the Schmidt discovery applies for this traffic offense. And also, based on the language of that rule, it's unclear whether that local rule just provides that the request for Schmidt discovery may be made orally instead of having to be made in writing. The local rule that I'm talking about is not a rule that has to do with the attorney asking for discovery. It's a rule that requires the trial court to order discovery. Is it the rule that was cited in his brief? I don't think so. Okay. Well, if the trial judge did not, in fact, order the discovery, then there can be no sanction for a violation of a discovery order. That would have been incumbent upon the trial judge to have done so, but in the absence of him doing so, the failure to comply with that nonexistent discovery order can't be sanctioned. To your knowledge, has Schmidt ever been applied to a petty or business offense? I couldn't find any cases applying it to a petty or business offense, but I couldn't find much case law on that issue. Counsel, you have one minute. Thank you. Thank you, counsel. Mr. Piles, you may reply. Have you seen any case suggesting that the Schmidt discovery would apply to a petty or business offense? I haven't. I'm conceding I haven't seen it. The local rule that Justice McDade is talking about was referenced in my brief. There is a local rule that indicates that the trial court shall order Schmidt discovery. Is that applicable to a business offense case? I have not seen that apply. I was candid with you when I asked. I typically don't ask for Schmidt discovery, but this is an overweight ticket, and there was a $12,000 fine that was involved. It takes a little bit out of what I would consider to be the minor $100, $200 fine type situation. The local rule you're referring to is connected to what the court system feels is mandatory under Schmidt. Isn't that correct? Isn't that the reason for the local rule? The local rule indicates that the trial court just orders it. In Will County practices, we do not bring written motions for Schmidt discovery. It's just ordered. It's just ordered in the misdemeanor traffic cases. When I talk about the misdemeanor traffic cases, there's different varying degrees. There could be suspended tickets, DUI tickets, where those are obviously involved. Is the overweight tickets put in that category? I don't know. I will say this, however, the state should have at least been on notice that they should have preserved the evidence, and the fact that by virtue of the local rule being in existence, whether or not the court could have done it. As I point out in my brief, the videotape and the report were erased or eliminated, I believe as Deputy Kinkard said, after the first appearance. The defendant had come in. On the initial day of the ticket, he asked for time to get an attorney. Before the second appearance, the evidence had already been destroyed. So the question of should it have been destroyed, Deputy Kinkard testified, I don't know if it was during testimony, he was explaining to the court what had happened. He had said that somebody else had written tickets with the same number and that it was accidentally destroyed because there was a mix-up with the numbers. And I'm not suggesting anything nefarious. In fact, I'm sure it was just an accident. But the fact of the matter is that the videotape showing the condition of the road, whether it was level, I thought was important evidence, and at the very least should have been available at trial if the deputy was going to testify. If I could reference the record on page 17. There was questions asked of the deputy about the length truck. I'm talking about the articulable facts based on the reasonable suspicion. He was asked, so as you're sitting here today, this is at line 13, he was over length. Answer, he was. Question, but you don't know what it was. Answer, it was enough that I chose not to write a ticket. Line 18, question, it was close. Answer, 55 is 55, 55-1 is over length. Question, all right, I'm with you, but we're talking about what you observed. Yes. Question, it was close. And he is essentially saying, well, it was over length. I don't think the deputy understood what I was asking for in those questions. I was trying to say, was it so over length that just you observed it going over the bridge? Would that be a fact close enough? I would indicate to you that it was not because he measured, and it was in fact really close, and that's why he chose not to write the ticket. So again, and if you go back to the record, and I asked him very specifically, the sight of the truck going over the bridge is what caused you to initiate the stop. Answer that question that was yes. Secondly, there was no certified wait ticket here. Oh, I'm sorry. Finish up your thought, and then I do have a question. Thank you. There was no certified wait ticket here. When you go to the truck weighing station for the state police operator, you put the truck on, they will print out a certified wait ticket. Those can be admitted into evidence. There was no certified wait ticket here. The ticket that was admitted was the actual ticket that the officer wrote based on his observations from the scales when he individually put the wheels up on the scales. There was no printout. There was no certified wait ticket. What was admitted into evidence was the actual pleading or the complaint filed by the officer to initiate the traffic case. I think there's a distinction there. The question that I had, there was some indication in the briefs that the deputy asked the court to reduce the fine by half. Is that correct? He did. Why? You know, I don't know, Justice McDade. I don't know if it was because of what happened in terms of the— I think the deputy was extremely apologetic about the videotape and the reports being destroyed, and that I questioned at length. I mean, that could have had something to do with it, but, you know, in the record he indicated that he thought that the guy's job might be at stake and he was trying—I guess he wanted to give him a break. That's what he testified in court. He was exercising some of Mercy's tenderness. Judge, I think that—I agree. I think the deputy was trying to be nice. I don't know if it was because of what happened with the reports. I'll grant you that. And I have the utmost respect for the trial court and Judge Rickman in this case. I think he did his very best. He heard us, and he was fully exhausted, and I have no complaints about that. I just think that, you know, based on the deputy's testimony here, that there was no reasonable suspicion for the stop and the fact that there was no sworn testimony about what— Thank you. Go finish. I hate leaving these things. Judge Holdridge, I appreciate that. The only thing I was going to say is that there was no sworn testimony from the deputy about what the overlink was, and I would dispute what the state— If you look at the record, there's never a testimony from the deputy that the weight restriction on that bridge was 46,000 pounds. It's not there. As for my colleague's indulgence in asking this question again, as to the waiver and forfeiture of these issues because of the plein air, and again, as pointed out by your position counsel, this was raised for the first time by you in your reply brief, these exceptions to the plein air—I mean the plein air doctrine. How are you defining the systemic or structural error for second-pronged plein air exception? In my brief, I cited a case, the Supreme Court case of People v. Thomas, that talks about the fact that it's sufficient to talk about plein air in a reply brief, and I would submit that in this particular case, the fact that there was a Fourth Amendment violation, that this essentially—the deputy saw a truck over a bridge and he initiated traffic, I think violates the Fourth Amendment, and I think that that makes it the constitutional violation that satisfies the second prong. Secondly, the fact that— Now, Thomas itself lists a very short list of what has ever been found to be a systemic or structural error, doesn't it? Correct, but the constitutional issues that I've talked about fall within those constraints. Okay, I don't believe there are any more questions. Thank you, counsel, both, for your arguments in this matter this afternoon. This matter will be taken under advisement. A written disposition shall issue. The court will stand in adjournment.